IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JESSIE D. HUGHES,

                Petitioner,

      v.                           Case No. 11-3140-SAC

KANSAS ATTORNEY GENERAL,

                Respondent.


MEMORANDUM AND ORDER

This case comes before the Court on Petitioner's motion for a writ of habeas corpus pursuant to 28 USC § 2254, and on his related motion for an evidentiary hearing. Petitioner, in custody at Lansing, contends that he was denied his right to effective assistance of trial counsel.

**Procedural Background**

Following a jury trial, Petitioner was convicted in the District Court of Shawnee County, Kansas, of murder in the second degree, and was sentenced to a term of 272 months. Petitioner appealed his conviction, but did not raise any claim of ineffective assistance of counsel. The Kansas Court of Appeals affirmed in part, reversed in part, and remanded for a hearing on a matter unrelated to this petition. *State v. Hughes*, 133 P.3d 841, 2006 WL 1318800 (2006). The Kansas Supreme Court denied the Petition for Review.

Petitioner then filed for post-conviction relief in state district court pursuant to K.S.A. 60-1507, alleging ineffective assistance of counsel and

other claims. After conducting an evidentiary hearing on that motion, the district court denied it, and the Kansas Court of Appeals affirmed that denial. *Hughes v. State*, 246 P.3d 413, 2011 WL 420712 (2011). The Kansas Supreme Court thereafter denied review. Petitioner thus exhausted his available state court remedies before filing this application for federal habeas corpus relief.

**Facts**

The facts of the underlying criminal case, as determined by the Kansas Court of Appeals in Petitioner's K.S.A. 60-1507 appeal, follow:

Hughes' 1–year–old son Naviontay died in May 2001 from injuries likely incurred from being severely shaken. The State charged Kreshawna Joiner with the murder of Naviontay in February 2002, but there was some evidence Brian Richardson was culpable in the murder. Richardson was babysitting Naviontay with Joiner when Naviontay was injured, and some other children in the house gave statements that Richardson threw, kicked, and shook Naviontay. Joiner's trial was scheduled to begin on June 24, 2002.

Four days before Joiner's trial was scheduled to commence, ... Richardson and several other people were sitting on a patio when Hughes walked into the backyard with a gun and shot Richardson to death. Four witnesses would later testify that Hughes' actions were unprovoked, that Richardson was unarmed and reading a magazine

when he was shot, and that no one on the patio had a firearm in their possession at the time of the shooting.

The State charged Hughes with one count of first-degree murder for Richardson's death. Hughes' first trial ended in a hung jury. At Hughes' second trial, Agent Steve Casper of the Federal Bureau of Investigation (FBI) testified as an expert for the State. Casper worked as an examiner in the FBI laboratory's firearms and tool marks unit. Casper examined eight 9 millimeter Luger bullet casings recovered at the scene and determined they were all fired from the same gun. Casper examined three bullets recovered from the scene and determined they were all fired from the same weapon. Casper further determined the bullets were fired from a .38 caliber barrel and explained that a .38 caliber barrel could be used to fire a 9 millimeter Luger cartridge. In the absence of a gun to compare the bullets and cartridge casings, however, Casper could not tell if the bullets and casings had been fired from the same gun.

The State also called as an expert Dr. Donald Pojman, the deputy coroner for Shawnee County. Pojman performed Richardson's autopsy and determined he had died from being shot seven times. Pojman testified the location of Richardson's gunshot wounds indicated he was seated when he was shot.

Hughes' theory of defense was that he killed Richardson in self-defense. In support of this theory, Hughes testified on his own behalf and also called his friend William Phelps as a witness. In contrast with the other witnesses, Phelps testified that Hughes shot Richardson after the two men exchanged words and got into a scuffle. Hughes testified that he was in the midst of an argument with Richardson when Richardson suddenly lunged for a gun sitting on another man's lap. Hughes claimed Richardson had him by the throat as he wrestled with Richardson for the gun, so he pulled out his own weapon and shot Richardson.

At the close of his second trial, the jury convicted Hughes of one count of second-degree murder, for which he was sentenced to 272 months in prison. This court upheld Hughes' conviction and sentence on direct appeal. *State v. Hughes*, No. 92,269, unpublished opinion filed May 12, 2006, *rev. denied* 282 Kan. 793 (2006).

*Hughes,* 2011 WL 420712 at *1-2.

Hughes subsequently filed an amended K.S.A. 60–1507 motion alleging his trial counsel was ineffective in failing to call expert witnesses to oppose the testimony provided by Casper and Pojman. Specifically, Hughes contended his trial counsel, Mr. Betts, should have called an expert to provide testimony on the victim's position and location when he was shot, the trajectory of the bullets that struck him, the effect of his gunshot

wounds, and on all the evidence relating to ballistics, firearms, blood, and blood splatter. The Court of Appeals' facts and findings on these issues, relevant to this petition, are set forth below:

The district court held an evidentiary hearing on September 4, 2009. Betts was asked at the hearing why he did not call an expert witness to counter Casper's testimony with regard to ballistics or the location of blood spatter. Betts responded:

"I didn't feel it was—under the circumstances and the facts of that case I didn't feel it was necessary to get an expert witness. Especially with regards to the ballistics. I thought that we had established through the coroner that the, the facts that were—the facts that the state relied upon, I thought we had established through the coroner that those shots could not have been made in the direction that—in the manner that the coroner said they were made because of the, the locations of the spent projectiles and the casings that were discovered."

Regarding Pojman's testimony, Betts conceded it might have been helpful to call an expert witness to contest some of Pojman's testimony concerning the angles at which the bullets had entered Richardson's body. Nonetheless, Betts testified that he made a strategic decision to not call an expert to counter Pojman because he did not believe a ballistics expert would have been helpful to analyze

the crime scene, examine crime scene photographs, witness reports, Richardson's position when he was shot, or other evidence. Furthermore, Betts believed a defense expert was unnecessary because of his cross examination of Pojman. In Betts' words,

> "A forensics—whether you call them ballistics expert or firearms expert or whatever you want to call them, might have been helpful in counteracting Dr. Pojman's testimony about the angle that the bullets took when they entered the decedent's body. But I thought that his, his testimony was so outside the bounds that any reasonable person or 12 reasonable people would, I thought—and I don't know what the jury decided, how they decided that, but if you're going to use somebody, that would have been the time to use an expert, but I didn't feel that an expert was necessary under the circumstances of this case based upon Mr. Pojman's own testimony. Sometimes you can take [the prosecution's] expert and make them our witnesses."

After taking the case under advisement, the district court found that Betts had made a strategic decision to not call ballistic or forensic experts concerning blood splatter, ballistic testing, Richardson's body placement, shell casings, or other evidence. The district court held that Betts' decision to not call an expert was not an error and accordingly denied Hughes' motion.

The [district] court reasoned:

"Hughes asserts his trial counsel committed error by not using a ballistics expert at trial. Several witnesses testified at trial that Hughes shot Richardson in the legs and chest while Richardson was seated in a chair reading a newspaper. Hughes claims, however, that he twice shot Richardson while the two men were wrestling on the ground, and again shot at Richardson as he was attempting to flee. Hughes asserts a ballistics expert would have testified that it was impossible for him to have shot Richardson while Richardson was seated in a chair because Hughes claims the chair did not have any bullet holes or blood stains.

"It clearly was not error for Hughes' trial counsel to fail to put a ballistics expert on the stand. Five eyewitnesses testified at trial that Richardson was shot while sitting in a chair reading a newspaper. Furthermore, the same witnesses testified that there was no physical struggle or physical or verbal altercation between Richardson and Hughes prior to Hughes shooting Richardson. Eyewitness testimony was also presented which indicated Richardson did not stand up from the chair during the shooting, nor did Richardson possess a gun at the time of the shooting, contrary to Hughes' assertion. Additionally, the deputy coroner testified at trial that Richardson's injuries were consistent with those of someone who was shot while sitting down, not standing up or lying down. There was no credible evidence presented

at trial to conclude that Richardson was shot during a struggle or an
altercation."

*Id.*, at *2-3.

## AEDPA Standard

This matter is governed by the Antiterrorism and Effective Death
Penalty Act of 1996 ("AEDPA"). AEDPA imposes a "highly deferential
standard for evaluating state-court rulings, and demands that state-court
decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. ————,
130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (citation and internal
quotation marks omitted). Under AEDPA, where a state prisoner presents a
claim in habeas corpus and the merits were addressed in the state courts, a
federal court may grant relief only if it determines that the state court
proceedings resulted in a decision (1) "that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as determined
by the Supreme Court of the United States" or (2) "that was based on an
unreasonable determination of the facts in light of the evidence presented in
the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to clearly established Federal law"
when: (a) the state court " 'applies a rule that contradicts the governing law
set forth in [Supreme Court] cases' "; or (b) " 'the state court confronts a
set of facts that are materially indistinguishable from a decision of [the
Supreme] Court and nevertheless arrives at a result different from [that]

8

precedent .' " *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006)

(quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court

decision involves an unreasonable application of clearly established federal

law when it identifies the correct legal rule from Supreme Court case law,

but unreasonably applies that rule to the facts. *Id.* at 407–08. Likewise, a

state court unreasonably applies federal law when it either unreasonably

extends, or refuses to extend, a legal principle from Supreme Court

precedent where it should apply. *House v. Hatch*, 527 F.3d 1010, 1018 (10th

Cir. 2008).

In reviewing state criminal convictions in federal habeas corpus

proceedings, a federal court does not sit as a super-state appellate court.

*See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "The question under

AEDPA is not whether a federal court believes the state court's

determination was incorrect but whether that determination was

unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550

U.S. 465, 473 (2007). In order to obtain relief, a petitioner must show that

the state court decision is "objectively unreasonable." *Williams v. Taylor*,

529 U.S. 362, 409 (2000) (O'Connor, J., concurring). "[A] decision is

'objectively unreasonable' when most reasonable jurists exercising their

independent judgment would conclude the state court misapplied Supreme

Court law." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006).

**Habeas Ineffective Assistance of Counsel**

"When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, ___ U.S.___, ___, 131 S.Ct. 770, 788 (2011). Thus Petitioner's burden on this habeas review is to show that there is no reasonable argument that his trial counsel satisfied *Strickland's* deferential standard. *See White v. Medina*, 2012 WL 401518, *2 (10th Cir. 2012).

To prevail on a claim for ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

> Although counsel's duty to conduct a thorough investigation of possible mitigating evidence is well established, *see, e.g., Rompilla v. Beard*, 545 U.S. 374, 387 (2005), "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. An applicant who challenges his counsel's effectiveness because of his failure to investigate must establish that the decision not to investigate was unreasonable from counsel's

10

perspective at the time the decision was made. *See Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005).

### Deficient Performance

In reviewing for deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, at 689. A petitioner demonstrates deficient performance by showing counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. Petitioner must show that counsels' decision was "completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

*Strickland* does not require "for every prosecution expert an equal and opposite expert from the defense." *Harrington*, 131 S.Ct. at 791. "In many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Id.* "The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690 ... ." *Harrington,* 131 S.Ct. at 788.

### Kansas Court of Appeals' Ruling

The Kansas Court of Appeals examined this claim, applied *Strickland's* standards, and found no deficient performance by Petitioner's counsel, stating:

For a petitioner to show that his or her trial counsel was ineffective, the petitioner must establish two essential elements: (1) that counsel's performance was constitutionally deficient, and (2) that but for counsel's deficiency there is a reasonable probability that the petitioner would have obtained a more favorable outcome. *Rowland v. State*, 289 Kan. 1076, 1083, 219 P.3d 1212 (2009) (citing to *Strickland v. Washington*, 466 U.S. 668, 687 . . .  .

Thus, at issue is whether Betts' representation of Hughes was constitutionally deficient. Hughes, as the movant, bore the burden to show by a preponderance of the evidence that Betts' representation was deficient. *State v. Barahona*, 35 Kan.App.2d 605, 611, 132 P.3d 959, *rev. denied* 282 Kan. 791 (2006). To prove such a claim, the movant must show that counsel made such serious errors that the counsel's legal representation of the petitioner was less than what is guaranteed by the Sixth Amendment to the United States Constitution. *Harris v. State*, 288 Kan. 414, 416, 204 P.3d 557 (2009). When analyzing counsel's performance, appellate courts strongly presume that the actions of petitioner's counsel fell within a broad range of reasonable professional conduct. *Rowland*, 289 Kan. at 1083, 219 P.3d 1212. Furthermore, trial counsel bears responsibility over tactical and strategic decisions. One such strategic decision is the determination of which witnesses will testify at trial. *Flynn v. State*, 281 Kan. 1154,

1165, 136 P.3d 909 (2006). The movant bears the burden of establishing that counsel's claimed deficiencies were not the product of strategy. *Rowland*, 289 Kan. at 1084, 219 P.3d 1212; *e.g. State v. Gleason*, 277 Kan. 624, 644, 88 P.3d 218 (2004). The movant's burden in this regard is high. If counsel has made a strategic decision after making a thorough investigation of the law and facts relevant to the realistically available options, then counsel's decision is " 'Virtually unchallengeable.' " If, however, counsel's strategic decision was made after a less than thorough investigation, the decision is considered reasonable only to the extent that reasonable professional judgment sustains the limitations on the investigation. *Rowland*, 289 Kan. at 1083–84, 219 P.3d 1212.

The district court in this case found that Betts made a reasonable strategic decision not to call an expert to counter Casper and Pojman. This decision was clearly supported by substantial competent evidence: Betts explicitly testified at the evidentiary hearing that he thought under the facts and circumstances of the case, he did not need to call an expert to rebut the testimony of either Casper or Pojman. We conclude that this strategic decision was based upon reasonable professional judgment. Consequently, the district court did not err in denying Hughes' K.S.A. 60–1507 motion.

*Hughes*, 2011 WL 420712 at *4.

This Court has independently reviewed the evidence, as summarized in part below, and finds the Kansas Court of Appeal's conclusion that trial counsel's strategy was not deficient under *Strickland* was "well within the bounds of a reasonable judicial determination." *Harrington*, at 789.

### Casper, the FBI Ballistics Expert

Casper testified that all eight cartridge casings had been fired from the same firearm, and that all three bullets had been fired from the same barrel, but could not say without examining the firearm itself that the cartridge casings and the bullets had been fired from the same firearm. Thus no ballistics expert was necessary to provide the jury a basis for finding, as Petitioner wishes, that the cartridges and the bullets had not come from the same firearm.

Further, defense counsel cross-examined Casper thoroughly and at length, and got him to admit numerous matters favorable to the Petitioner, including the following: he did not photograph the items he examined; he made no report of the process he used in examining the items; he could not identify which or even how many markings were necessary for a "match"; he could not explain what scientific method he had used; and his opinion was "a subjective opinion based on training and experience." Vol. IV, p. 465. In essence, Casper asked the jury to accept his opinion without being informed of the underlying facts supporting the validity of his conclusion.

**Pojman, the Expert Forensic Pathologist**

Pojman, the Deputy County Coroner, testified as an expert forensic pathologist. Defense counsel not only cross-examined Pojman at length and in detail, but also called him as a defense witness and impeached him with his prior testimony from the preliminary hearing. *See* Vol. VI, p. 876 et seq.

Pojman testified to the following: he is not board certified as a forensic pathologist because he had unsuccessfully taken the examination for forensic pathology and for anatomic pathology, and needed to pass anatomic pathology to get board certified as a forensic pathologist; the victim had been shot three times in one leg, twice in another leg, twice in his back, and none in his chest (in contradiction of testimony from several eyewitnesses); he could not say whether the weapon was more or less than 24 inches away from the victim when it was discharged; he visited the scene of the crime and spoke to officers there but could not see the area where the shooting had occurred; the victim's injuries were consistent with those of someone who was shot while sitting down; Pojman had been informed before he conducted the autopsy that the victim was shot while seated; he did not examine or test the victim's hands to determine if the victim had recently fired a weapon; it is important to search the body and the clothing for physical evidence but he did not examine the victim's clothing; AMR personal found the body prone on the ground perpendicular to fence with his legs leaning against fence, but it would be unlikely for the victim to have traveled

15

the distance from the chair to the fence after having received all his gunshot wounds; where the shooter was standing, and whether the victim was seated or was on the ground, were merely assumptions. The examination conducted by Petitioner's trial counsel was constitutionally effective.

Petitioner has not shown that trial counsel's decision not to call an expert to rebut the testimony of either Casper or Pojman, or to testify to matters beyond their testimony, was constitutionally deficient. Casper's testimony did little, if anything, to counter Petitioner's self-defense theory. Pojman's testimony contradicted that of eyewitnesses and supported Petitioner's testimony that he had shot the victim while he was trying to run away. It was at least arguable that a reasonable attorney could decide to forgo inquiry into additional forensics evidence under the circumstances here. Counsel is "entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington*, 131 S.Ct. at 789.

### Prejudice

Further, even assuming deficient performance of counsel, the Petitioner has not met his burden to show prejudice. To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* It is not enough "to

16

show that the errors had some conceivable effect on the outcome of the proceeding." *Id.*, at 693. Rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687.

Petitioner has not demonstrated a reasonable probability that a ballistics expert would have testified in his favor. Petitioner fails to point to facts in the record which an expert could have used to assist his theory of defense. Petitioner hopes that a ballistics or other expert would have bolstered the credibility of Petitioner's self-defense testimony by showing that some of the shots which the victim sustained had been fired at close range, or that the victim was not seated when he was shot, or that the bullets and casings found at the scene had been fired from two different guns. But such testimony is mere speculation, and speculation that another expert could have provided sworn testimony contradicting that of the prosecution's expert is insufficient. *See United States v. Boone*, 62 F.3d 323, 327 (10th Cir. 1995).

Additionally, Petitioner has not demonstrated a reasonable probability that the outcome of the trial would have been different had his attorney used a ballistics expert. The jury did not find the Petitioner guilty of first degree murder, as charged, but convicted him of second degree murder, essentially finding that Petitioner killed the victim intentionally but without premeditation. *See* instructions. (Vol. III, p. 114-15). The jury, in not finding

17

Petitioner guilty of first degree murder, apparently credited Petitioner's testimony to some extent. Petitioner has not shown that the desired testimony would have had a reasonable likelihood of affecting the jury's verdict in light of the totality of the evidence, which included the consistent eye-witness testimony of several persons.

A reasonable argument thus exists that counsel satisfied *Strickland's* deferential standard, as the Kansas Court of Appeals held. Habeas relief is accordingly unavailable.

### VII. Motion for Evidentiary Hearing

Petitioner asks the Court or the federal public defender to engage a ballistics expert to perform the necessary examination and offer the expert's testimony at an evidentiary hearing. Petitioner erroneously seeks to place on the Court the burden to discover additional evidence that would support his claims, but federal post-conviction review is limited and the existing facts amply support the state court's resolution of the ineffective assistance of counsel claims. Accordingly, the court finds no need for an evidentiary hearing. *See Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record.)"; *Schriro,* 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## VIII. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected the constitutional claims on the merits, a petitioner makes that showing by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See United States v. Bedford*, 628 F.3d 1232 (10th Cir. 2010). Petitioner has not met this standard as to any issue presented, so no certificate of appealability shall be granted.

IT IS THEREFORE ORDERED that the petition for habeas corpus relief under 28 U.S.C. § 2254 (Dk.1) is denied.

Dated this 8th day of January, 2013, at Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge